**JePhunneh LAWRENCE, Plaintiff,**

v.

**Elmer B. STAATS, et al., Defendants.**

**Civ. A. No. 77–913.**

United States District Court,
District of Columbia.

May 15, 1984.

JePhunneh Lawrence, Washington, D.C., pro se.

George Williams, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

FLANNERY, District Judge.

This matter came before the court on plaintiff's motion for the allowance of attorney fees. For the reasons stated below, the court does not believe plaintiff is entitled to fees, and his motion is therefore denied.

## BACKGROUND

Plaintiff is a former excepted service employee of the General Accounting Office ("GAO"). In May, 1977, he filed a suit in this court alleging that GAO had discriminated against him on the basis of race. Plaintiff, an attorney, appeared *pro se*, and originally claimed that GAO's actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, and the Fifth Amendment to the Constitution. Plaintiff subsequently amended his complaint to stress that the Fifth Amendment was his basis for relief. Defendants filed a motion to dismiss on the ground that plaintiff's exclusive remedy was Title VII, and that his title VII claim was barred for failure to exhaust administrative remedies. Plaintiff argued in response that GAO was not covered by Title VII, and that he could therefore pursue his Fifth Amendment claim despite his admitted failure to exhaust administrative remedies under Title VII. On July 29, 1977, this court held that Title VII did not apply to GAO and denied defendants' motion to dismiss, but certified the issue for interlocutory appeal.

On February 5, 1981, the United States Court of Appeals for the District of Columbia affirmed this court's Order denying defendants' motion to dismiss, holding that Title VII did not apply to excepted service employees like plaintiff, although it did apply to other GAO employees. *Lawrence v. Staats*, 640 F.2d 427 (D.C.Cir.1981). Shortly before the Court of Appeals rendered this decision, Congress passed the General Accounting Office Personnel Act of 1980, Pub.L. No. 96–191, 94 Stat. 27 (1980), in which Title VII was made clearly applicable to all GAO employees. Defendants then petitioned for a rehearing in the U.S. Court of Appeals, arguing that the GAO Personnel Act should have been given retroactive effect, and that because of Title VII's now clear applicability to GAO, plaintiff's complaint should be remanded for resolution of his Title VII claim. Defendants would then, of course, have argued that plaintiff's failure to exhaust Title VII administrative remedies would require dismissal. Plaintiff argued that retroactive application would be unfair, and that he should be able to proceed in this court with his Fifth Amendment claim. The Court of Appeals held in plaintiff's favor, denying rehearing and holding that Title VII was still inapplicable to plaintiff's case. *Lawrence v. Staats*, 665 F.2d 1256 (D.C.Cir.1981). Because the Court of Appeals held that Title VII was inapplicable, plaintiff was apparently not barred from asserting his Fifth Amendment claim, and did so on remand.

On remand to this court, the case began what defendant accurately describes as a "second phase." Discovery commenced on plaintiff's claims and various motions were filed between the October 13, 1981 remand and early April, 1982. On April 6, 1982, this court ruled on outstanding motions, and allowed plaintiff to add a claim based on 42 U.S.C. § 1981. Shortly thereafter, on April 13, 1982, plaintiff decided not to continue *pro se* and retained the law firm of Hudson, Leftwich and Davenport to represent him for the remainder of the case. On October 28, 1982, the case was settled and a Stipulation of Dismissal was filed.

The settlement provided that GAO pay plaintiff $27,000 and that all outstanding claims, with the exception of attorney fees issues, be dismissed. By Settlement Agreement dated December 10, 1982, GAO agreed to pay plaintiff's retained counsel a sum in complete satisfaction for their attorneys fees. GAO and plaintiff, however, have not reached agreement on the amount of fees, if any, to be paid to plaintiff for the time he spent representing himself in this lawsuit. Plaintiff seeks an award of $168,356.12; defendant argues that plaintiff is not entitled to attorney fees.

## DISCUSSION

The statutory fee provision under which plaintiff seeks attorney fees is not immediately apparent from his motion. Although plaintiff seeks compensation primarily, if not exclusively, for work expended during litigation and appeals of the Title VII issue, he does not appear to seek fees under Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k). Instead, plaintiff seeks at-

torney fees under the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988.[1] That section provides that:

> In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the cost.[2]

The court finds plaintiff's choice of § 1988 as a vehicle for his attorney fee claims quite curious, because only a miniscule part of his efforts, if any, were devoted to asserting his belated § 1981 claim *pro se*, and the retained attorneys who followed through on this claim and negotiated the settlement have already been compensated. Yet the § 1981 claim is the only one for which fees can be awarded under § 1988; it offers no basis for the award of fees expended during litigation of a Title VII claim or a Fifth Amendment claim. Even if the court reads plaintiff's fee request as proceeding under 42 U.S.C. § 2000e–5(k), however, it finds that plaintiff is not entitled to recover for his efforts on the Title VII issue, for the reasons discussed below. Because the court's disposition of this motion would be the same if plaintiff's fee request were read as pursuant to § 1988 or § 2000e–5(k), and because the standards to be applied under these sections are the same, *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 70 n. 9, 100 S.Ct. 2024, 2034 n. 9, 64 L.Ed.2d 723 (1980); *Sullivan*

*v. Commonwealth of Pa. Dept. of Labor*, 663 F.2d 443, 447 (3d Cir.1981), the court will treat plaintiff's request as pursuant to each of these statutes. For the alternative reasons stated below, the court holds that plaintiff is not entitled to attorney fees for work he did on a *pro se* basis in this case.

A. *An attorney appearing pro se in a discrimination case is not entitled to attorney fees, even if he prevails.*

■ As noted above, the law firm representing plaintiff during the second phase of this litigation, during which settlement was reached, has already been compensated for its work in the case. The sole remaining issue is plaintiff's claim for attorney fees for the time he spent representing his cause *pro se*. After careful review of the applicable attorney fee statutes and the relevant caselaw, this court holds that *pro se* attorneys are not entitled to fees under 42 U.S.C. § 1988 or § 2000e–5(k) even if they prevail.

■ The United States Court of Appeals for the District of Columbia Circuit has not squarely addressed this issue. Courts from other Circuits, however, have overwhelmingly concluded that *pro se* plaintiffs are not entitled to attorney fees under § 1988, and by implication under § 2000e–5(k).[3] *Pitts v. Vaughn*, 679 F.2d 311, 312–13 (3d Cir.1982); *Wright v. Cromwell*, 674 F.2d 521, 522 (6th Cir.1982); *Cofield v.*

---

**1.** Plaintiff states that "[t]he attorney fee request ... in our own case is based on the Civil Rights Attorney's Fee Award Act. 42 U.S.C. § 1988. Thus, irrespective of whether the fee request is under Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), or under the Civil Rights Attorney's Fee Act, 42 U.S.C. § 1988, the result is the same...." Plaintiff then goes on to discuss the purposes of § 1988, further indicating that his fee claim is pursuant to that statute. Motion for the Allowance of Attorney Fees at 4. However, because plaintiff indicates that the result would, in his view, be the same under either § 1988 or § 2000e–5(k), the court will treat plaintiff's request as pursuant to both of these statutes, as discussed below.

**2.** As defendant points out, plaintiff's claim, like most claims against the United States, can also be read as pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(b), which waived

sovereign immunity against the United States for certain attorney fee awards. However, because the EAJA provides that fees may be awarded "under the terms of any statute which specifically provides for such an award," the court's analysis will proceed under § 1988 and § 2000e–5(k).

**3.** As discussed *supra,* the statutory language, legislative purposes, and standards for attorney fee awards are the same under § 2000e–5(k) as under § 1988. Although the cases which have analyzed the propriety of fee awards to *pro se* plaintiffs have been § 1988 cases, their reasoning applies equally to § 2000e–5(k) cases. In fact, § 1988 cases that have analyzed this issue have typically relied upon the analysis of § 2000e–5(k) cases, stating that the statutes may be interpreted together, *see, e.g., Cofield v. City of Atlanta,* 648 F.2d 986, 987 n. 3 (5th Cir.1981).

*Atlanta,* 648 F.2d 986, 987–88 (5th Cir. 1981); *Lovell v. Snow,* 637 F.2d 170, 171 (1st Cir.1981); *Davis v. Parratt,* 608 F.2d 717, 718 (8th Cir.1979); *Owens-El v. Robinson,* 498 F.Supp. 877, 878–80 (W.D.Pa. 1980), *aff'd,* 694 F.2d 941 (3d Cir.1982); *Rheuark v. Shaw,* 477 F.Supp. 897, 928 (N.D.Tex.1979). The court finds the statutory analysis and reasoning of these cases persuasive, and does not believe that this Circuit's allowance of attorney fees to *pro se* litigants in FOIA cases changes the analysis, since the intent of Congress and purpose of FOIA and its fee provisions differ significantly from the intent and purposes of §§ 1988 and 2000e–5(k), *Cofield,* 648 F.2d at 988; *Grooms v. Snyder,* 474 F.Supp. 380, 383–84 (N.D.Ind.1979). As both *Cofield* and *Grooms* point out, the attorney fee provisions of FOIA were designed, at least in part, to penalize the government for unreasonable withholdings; hence award of fees to *pro se* litigants is appropriate to accomplish this purpose. However, no such punitive purpose is intended to be served by civil rights attorney fee statutes. As both the legislative history and cases that have interpreted these statutes make clear, the primary purpose of these provisions is to provide access to the courts to those individuals who have "little or no money with which to hire a lawyer." S.Rep. No. 94–1011, 94th Cong., 2d Sess. 2 (1976), U.S.Code Cong. & Admin. News 1978, pp. 5908, 5910; *Davis,* 608 F.2d at 718; *Cofield,* 648 F.2d at 988. A *pro se* plaintiff, especially an attorney, is not hampered from obtaining counsel and gaining access to the courts by poverty; he appears himself.

This court, like the court in the only known case that has considered the precise issue posed here, finds no reason to draw a distinction between *pro se* non-attorneys, who cannot recover fees, and *pro se* litigants who are attorneys. *See Duncan v.*

*Poythress,* 572 F.Supp. 776, 778–80 (N.D. Ga.1983). As noted, the legislative history of both § 1988 and § 2000e–5(k) makes it clear that the fee provisions were not designed to compensate worthy advocates or to benefit attorneys, but to enable those without financial resources to litigate their claims, *see Cofield,* 648 F.2d 987–88; *Duncan,* 572 F.Supp. at 778. Further, as several courts have stated, a related purpose of Congress "was to increase the level of competence with which [discrimination] claims are prosecuted, not to make whole those who have been put to the time and trouble of advocating their own rights," *Duncan,* 572 F.Supp. at 778–79; *See Owens-El,* 498 F.2d at 942–43. An attorney who appears *pro se* in a civil rights case presumably has more competence than a layman, and, like a non-attorney *pro se* plaintiff, is not faced with the financial burden of hiring an attorney to represent his cause because he appears himself. Congress has determined, in essence, that the government need not compensate litigants for "opportunity costs" associated with bringing discrimination suits in order to ensure meaningful access to the courts; the law need only provide that litigants with meritorious claims will be compensated for actual funds expended to pay for an attorney's services in order to achieve that goal.[4]

■ In this case, there is no question that plaintiff had meaningful access to the courts, and was not prevented from pressing his claim by incompetent representation or inability to pay an attorney. He provided himself with competent representation for the part of the suit at issue here, and suffered only non-compensable "opportunity costs" by choosing to represent himself. Because § 1988 and § 2000e–5(k) were not designed to "make whole those who have been put to the time and expense of advocating their own rights,"[5] and in accord

4. Both § 1988 and § 2000e–5(k) provide for "reasonable attorney's fees *as part of the costs,*" 42 U.S.C. § 1988, 2000e–5(k) (emphasis added), which indicates that fees are to be awarded only if the plaintiff has actually incurred the "cost" of

paying an attorney, and not if he avoids such costs by representing himself.

5. In this case, it may be argued that the Settlement Agreement between plaintiff and GAO, which compensated him for lost wages from the time of his discharge until the settlement, has

with caselaw denying attorney fees to *pro se* litigants, this court holds that plaintiff is not entitled to recover attorney fees for his work in this case on his own behalf.

B. *Although plaintiff is a "prevailing party," there are "special circumstances" which justify the denial of the fees plaintiff seeks.*

■ There is no dispute that plaintiff, who recovered a $27,000 settlement and successfully litigated the Title VII coverage issue, is a prevailing party. However, even if the court were to ignore the difficulties plaintiff faces because he appeared *pro se,* it would hold that plaintiff is not entitled to attorney fees in this case because "special circumstances" exist which would render such an award unjust, *see* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 4 (1976) (no award to prevailing party in § 1988 case if "special circumstances" exist); *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 63, 68, 100 S.Ct. 2024, 2030, 2033, 64 L.Ed.2d 723 (1980) (no award in § 2000e–5(k) case if "special circumstances" exist).

Plaintiff seeks recovery for the work he did on the Title VII coverage issue, which he had to, and did, prevail on as a prerequisite to asserting his Fifth Amendment and belated § 1981 claims. However, it was the Fifth Amendment and § 1981 claims which presumably provided the basis for plaintiff's negotiated recovery; plaintiff did not assert a Title VII claim, but merely argued that Title VII was not an obstacle to his recovery. Neither § 1988 nor § 2000e–5(k) provide a basis for recovery of attorney fees for plaintiff's Fifth Amendment claim, but perhaps because § 1981 provided a partial basis for plaintiff's victory, plaintiff chose to seek fees under § 1988, the fee provision allowing fees in § 1981 cases. But in this case, the § 1981 claim was added only one week

before plaintiff hired counsel, and his retained counsel have already been compensated. There is no evidence in the record that plaintiff did any work on the § 1981 claim prior to hiring counsel,[6] so an award of fees under § 1988 for plaintiff's *pro se* work would not be justified. Most perplexing, however, is that plaintiff, although apparently seeking fees under § 1988, does not even *claim* to be seeking compensation for his work on the § 1981 claim—he claims that he is seeking fees for his work on the Title VII issue. If the court were to read plaintiff's application literally, it would have to hold that plaintiff cannot recover fees for Title VII work under the attorney fee statute he cites: 28 U.S.C. § 1988.

Moreover, if the court reads plaintiff's fee request as pursuant to § 2000e–5(k), the appropriate provision for Title VII fee claims—as it will despite plaintiff's apparent choice of statute—it still cannot grant plaintiff's fee request. In fact, given the unique and "special" circumstances of this case, the court finds plaintiff's claim that he has served as a "catalyst" for the extension of Title VII coverage to all GAO employees almost incredible. Throughout this lawsuit, plaintiff argued that Title VII did *not* apply to GAO employees, an argument he had to make to avoid dismissal for his failure to exhaust Title VII administrative remedies. It was the defendant that argued forcefully that GAO was covered by Title VII. Hence, due to the unique posture of the case, the plaintiff, although complaining of discrimination, argued *against* a position that would, in a broad sense, protect civil rights; instead he argued a narrow position that was solely in his own interest. Defendant, on the other hand, pushed this court, the U.S. Court of Appeals, and ultimately Congress for an interpretation of the law that would further the Title VII rights of GAO employ-

---

already made plaintiff "whole" for the efforts he expended during that period, and that an award of attorney fees for work plaintiff did during that period would be a "double payment," a windfall.

6. Plaintiff's exhibits indicate that between April 6, 1982, when his § 1981 claim was added, and April 13, 1982, when outside counsel was retained, plaintiff's only work on the case was to review the files in preparation for turning over the case to retained counsel.

 
ees—complete coverage. It is true that plaintiff prevailed in this court and the Court of Appeals; he was successful in his argument that the statute at issue did not extend Title VII coverage to certain GAO employees. If Congress had not amended the statute to eliminate the loophole plaintiff successfully demonstrated, however, plaintiff's efforts would have resulted in his own victory at the expense of Title VII coverage for his fellow GAO employees. This is a case in which plaintiff's efforts not only failed to advance the public benefit, a "special circumstance" precluding fees, *see Riddell v. National Democratic Party,* 624 F.2d 539, 543–45 (5th Cir.1980); *Naprstek v. City of Norwich,* 433 F.Supp. 1369, 1370–71 (N.D.N.Y.1977); but here plaintiff's position was positively harmful to the civil rights of others. It would be anomalous and unjust to award plaintiff for his "victory" and to penalize the government for taking a litigation position, in good faith, that would cause the advancement of civil rights by expanding Title VII coverage.

Further, the court finds plaintiff's attempt to take credit for Congress's ultimate amendment and expansion of Title VII to GAO to be wholly without merit and quite self-serving. Plaintiff's only "victory" on the Title VII issue was in court, and the victory was a narrow one. Plaintiff prevailed first on his argument that the pre-amendment statute did not apply to his class of GAO employees, and later on his argument that Congress's expanding amendment should not apply retroactively to his case. In no way did he support Congress's amendment; indeed it threatened his lawsuit. On the other hand, defendant Staats appeared before Congress to argue for the expanding amendment that was ultimately adopted.[7] It is only now, after plaintiff has succeeded in his efforts to preclude Title VII coverage for himself, that he claims credit for its expansion to all GAO employees. Plaintiff's narrow "victory" was to escape Title VII coverage; he cannot claim as part of that victory, for which he seeks attorney fees, that he served as the "catalyst" for Title VII expansion. To accept plaintiff's reasoning would turn the purpose of the attorney fee provisions on its head. If the efforts of a plaintiff to benefit from a loophole in Title VII law expose that loophole so that Congress closes it, that plaintiff is no more entitled to be rewarded with attorney fees than the beneficiary of a tax windfall, who, by exposing the law's inequity compels Congress to eliminate it, is entitled to claim credit for reducing the national deficit. The court holds that the existence of "special circumstances" in this case renders an award of attorney fees for plaintiff's Title VII work inequitable and unfair.

Accordingly, for the reasons stated alternatively in sections A and B above, this court denies plaintiff's motion for allowance of attorney fees. An appropriate Order accompanies this Memorandum.

**7.** Defendant Staats advocated an amendment to expand Title VII's coverage to all GAO employees during hearings in the House of Representatives on H.R. 3339, which became the GAO Personnel Act of 1980, *see A Bill to Provide for*

*Employment and Compensation of Employees of the General Accounting Office,* Hearings on H.R. 3339 before the Subcommittee on the Civil Service of the House Committee on Post Office and Civil Service, 96th Cong., 1st Sess. (1979).